UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN E.E. FRANKLIN, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:12-cv-129-TWP-TAB |
| ) | |
| AMERICAN HERITAGE LIFE INSURANCE ) | |
| COMPANY, ) | |
|     Defendant. ) | |

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiff John Franklin and Defendant American Heritage Life Insurance Company dispute whether Kim Arnett—who assigned her life insurance policy to Plaintiff—made materially false statements about her health when applying for life insurance. Defendant contends that had Arnett disclosed her health problems on the insurance application, she would have been denied coverage. In contrast, Plaintiff claims that Arnett's health problems were not validly diagnosed until after she obtained coverage, and therefore Plaintiff is entitled to $100,000 in life insurance proceeds. For the reasons below, the Magistrate Judge agrees with Defendant and recommends that Defendant's motion for summary judgment [Docket No. 48] be granted, and Plaintiff's motion for summary judgment [Docket No. 60] be denied.

**II.   Background**

Kim Arnett smoked one pack of cigarettes per day for approximately 30 years. [Docket No. 61-5 at 3.] Like many cigarette smokers, Arnett developed health problems related to tobacco use. From 2006 to 2009, Arnett's primary care physician, Dr. J. Timothy Nichols,

1

treated Arnett for acute bronchitis, pharyngitis, asthma, sore throat, chest congestion, drainage, and cough. [Docket No. 62 at 5; Docket No. 49 at 3–4.] On December 17, 2008, Dr. Nichols diagnosed Arnett with chronic obstructive pulmonary disease ("COPD"). [Docket No. 62 at 5; Docket No. 49 at 4.]

On May 5, 2009, approximately five months after being diagnosed with COPD, Arnett applied for a $100,000 life insurance policy with Defendant. [Docket No. 62 at 4.] Question five on the life insurance application asked:

> a) In the last 3 years, has any person to be insured: had a chronic disease (including but not limited to heart disorder, stroke, cancer, diabetes, etc.); been hospitalized; seen a physician (other than for colds, flu or normal pregnancy or a routine physical with no unfavorable results); or been counseled for or excessively used alcohol or any type of drug?
> b) Is any person to be insured currently under the care of a physician?

[*Id.*] Arnett answered "No" to question five and its subparts. [*Id.*] Arnett signed the application acknowledging that the "statements and answers given on this application are true, correct, and completely recorded," and that "any misstatement or misrepresentation in the application may result in loss of coverage." [Docket No. 49 at 6.] Defendant issued a 20-year term life insurance policy to Arnett in the amount of $100,000. [Docket No. 62 at 4.]

On May 28, 2009, Arnett returned to Dr. Nichols with respiratory symptoms. [Docket No. 49 at 7.] A week later, Arnett underwent a CT scan which revealed a lung mass and she was diagnosed with lung cancer. [*Id.*] On June 25, 2009, Arnett took a pulmonary function test that showed "moderate to severe restrictive lung defect with severely reduced diffusing capacity" and "no response to bronchodilators." [Docket No. 61-5 at 3.]

In October 2009, Arnett assigned her life insurance policy to Plaintiff, which became effective on November 2, 2009. [Docket No. 62 at 9.] Arnett passed away in August 2010. The

causes of death listed on the death certificate are "colonic perforation" and "chronic obstructive pulmonary disease." [Docket No. 50-1 at 23.] Plaintiff notified Defendant of Arnett's death and requested $100,000 in life insurance proceeds. Defendant denied Plaintiff's request after a claims investigation revealed, among other things, that Dr. Nichols diagnosed Arnett with COPD prior to applying for life insurance benefits.

### III.    Discussion

#### *A.    Breach of contract*

A false statement on an insurance application bars recovery of the insurance proceeds if the "false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." Ind. Code § 27-8-5-5(c); *see also Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997) ("[A] material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option."). A misrepresentation is material "if knowledge of the truth would have caused the insurer to refuse the risk or to charge a higher premium for accepting the risk." *Guzorek*, 690 N.E.2d at 672. "Whether the applicant intended to mislead or knew of the falsity is irrelevant: 'False representations, concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was innocently made or made with a fraudulent design.'" *Id.* at 673. The "materiality of the representation or omission is a question of fact to be resolved by the factfinder unless the evidence is such that there can be no reasonable difference of opinion." *Id.*

      1.      Misrepresentations

Defendant contends that Arnett made misrepresentations when she answered "No" to question five. Question five on Defendant's life insurance application asked:

> a) In the last 3 years, has any person to be insured: had a chronic disease (including but not limited to heart disorder, stroke, cancer, diabetes, etc.); been hospitalized; seen a physician (other than for colds, flu or normal pregnancy or a routine physical with no unfavorable results); or been counseled for or excessively used alcohol or any type of drug?
> b) Is any person to be insured currently under the care of a physician?

[Docket No. 62 at 4.]

There is no dispute that Arnett was diagnosed with cancer after signing the insurance application in May 2009. Nevertheless, Dr. Nichols' diagnosed Arnett with COPD in December 2008, approximately five months before she applied for life insurance. Plaintiff attempts to undermine the diagnosis by suggesting that it was not actually a diagnosis but rather a "suspicion" of COPD. [Docket No. 74 at 6.] The record, however, does not support that contention. Dr. Nichols' diagnosis is explicitly listed in his notes for the December 17, 2008 examination of Arnett. [Docket No. 50-2 at 14 (RPFP 0004).] Moreover, Dr. Nichols testified that he diagnosed Arnett with COPD and did so based on the "history of the patient's past" and a physical evaluation:

> There were repeated episodes where the patient would come in with acute infections, upper-respiratory infections, and would have symptoms that would be cough, shortness of breath, breathing difficulty. And with her history of asthma and tobacco abuse, then those are both risk factors for developing chronic obstructive pulmonary disease. And my impression would be from my notes—I don't have personal recollection of this visit, obviously, from almost four years ago—but my impression would be with that diagnosis that she had developed, in my mind, a clinical picture of the chronic obstructive pulmonary disease, which I explained involves a chronic ongoing inflammation and decreased lung function, and that is brought on by multiple factors, tobacco being one, asthma being another, repeated infections would be probably the three most common.

[Docket No. 50-2 at 4–5 (Nichols' Dep. at 13–17).] Thus, Dr. Nichols did not merely suspect

COPD, but rendered a diagnosis.

Plaintiff also attempts to raise a factual dispute by challenging the validity of Dr. Nichols' diagnosis. In Plaintiff's view, if the diagnosis was invalid, then Arnett did not make a false statement. However, it is irrelevant whether Dr. Nichols' diagnosis was valid in hindsight. For purposes of determining falsity, the Court must examine the facts in existence at the time she applied for insurance. At that time, Dr. Nichols had diagnosed Arnett with COPD and she failed to disclose the diagnosis. Thus, answering "No" to question five was a misrepresentation. *See Ruhlig v. Am. Cmty. Mut. Ins. Co.*, 696 N.E.2d 877, 880–81 (Ind. Ct. App. 1998) ("[S]he had been diagnosed with COPD, pulmonary fibrosis, and lumbar disc disease, had been prescribed several medications not listed on her application, and had seen physicians that went unnamed on the application. There is no question that Ruhlig made false representations on the application.").

Plaintiff's statement of material facts not in dispute also asserts that Arnett was not informed about the December 2008 COPD diagnosis. [Docket No. 62 at 6 (citing Nichols' Dep. 33:7–34:12; 40:10–13).] Plaintiff does not develop this issue or discuss it anywhere else in the briefs. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). In any event, page 34 of Nichols' deposition was not submitted to the Court and pages 33 and 40 do not support Plaintiff's contention. On the contrary, the record supports the conclusion that Arnett was aware of the diagnosis. Arnett's December 2008 appointment with Dr. Nichols specifically addressed COPD [Docket No. 50-2 at 14 (RPFP 0004)], and Dr. Nichols testified that he advised Arnett to quit smoking to prevent her COPD from getting worse. [Docket No. 50-2 at 5 (Nichols' Dep. at 14–17).] Thus, Plaintiff's sparse and unsupported reference that

Arnett was unaware of the diagnosis is insufficient to raise a factual dispute as to whether Arnett knew about the diagnosis. Because Arnett failed to disclose the diagnosis in response to question five, she made a false representation.

In addition to omitting that she was diagnosed with COPD, Arnett made a second false representation. Arnett failed to disclose that in the past three years she had "seen a physician (other than for colds, flu or normal pregnancy or a routine physical with no unfavorable results)."[1] Regardless of whether Dr. Nichols properly diagnosed Arnett with COPD or merely suspected COPD, he nonetheless saw Arnett for COPD-related symptoms on December 17, 2008. Despite seeing Dr. Nichols within the three-year period before applying for insurance, Arnett did not disclose the examination to Defendant. Thus, this is an additional basis to conclude there was a false representation.

    2.    Materiality

A false statement on an insurance application only bars recovery if the misrepresentation was material. Ind. Code. 27-8-5-5(c); *Guzorek*, 690 N.E.2d at 672. In *Ruhlig*, the court held that a tobacco user who failed to disclose a COPD diagnosis on an insurance application made a material misrepresentation. 696 N.E.2d at 880–81. The court concluded that the misrepresentation was material because the insurer submitted an affidavit along with an underwriting manual indicating that the insurance application would have been uniformly denied had the insured disclosed the diagnosis. *Id.*; *see also Bennett v. CrownLife Ins. Co.*, 776 N.E.2d

---

[1] Plaintiff dedicates much of his reply brief to arguing that the term "under the care of a physician" is ambiguous. [Docket No. 74 at 5.] However, question 5(a) simply asked whether Arnett has "seen a physician," while question 5(b) asks the more narrow question of whether she was "under the care of a physician."

1264, 1271 (Ind. Ct. App. 2002) ("CrownLife designated evidence that had it known of John's two appointments with Dr. Fechtman, it would not have issued the insurance policy . . . .").

Like in *Ruhlig*, John Johnson, director of underwriting for Defendant, submits a declaration asserting that Arnett would have been denied coverage had she disclosed her medical history. [Docket No. 50-1 at 2.] Johnson states that because Arnett was diagnosed with COPD and saw a physician in the last three years (other than for colds, flu, normal pregnancy or a routine physical), her application would have been denied. [*Id.*] Moreover, the underwriting guidelines state that medical histories requiring an immediate decline include COPD "or any other lung disorder in combination with current tobacco use." [Docket No. 50-1 at 26–27.] Plaintiff admitted on the application that she was a tobacco user [Docket No. 50-1 at 5], which when combined with COPD would have resulted in a denial.

To the extent Plaintiff claims that the COPD diagnosis is immaterial because it is invalid, that argument fails because regardless of whether the diagnosis was valid Dr. Nichols' opinion "might reasonably have influenced the insurer in deciding to reject or accept the risk or charge a higher premium." *Ruhlig*, 696 N.E.2d at 880. Even disclosing an invalid diagnosis would have at least put Defendant on notice to further investigate and determine whether Plaintiff actually had COPD. But due to Arnett's misrepresentations, Defendant was not given the opportunity to consider the risks. Thus, the Magistrate Judge concludes that Arnett made materially false statements in the insurance application.

  B.  *Bad faith and fees*

Plaintiff contends that an "insurer has a duty to deal in good faith with its policyholders and when so violating this duty, treble damages, attorney's fees and costs shall be awarded to

Plaintiff."  [Docket No. 62 at 14 (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993).]  In light of the Magistrate Judge's conclusion that Defendant properly rejected Plaintiff's insurance claim, Plaintiff's bad faith claim and request for fees necessarily fails.

## IV.     Conclusion

Arnett smoked a pack of cigarettes a day, developed health problems, and was diagnosed by her primary care physician as having COPD.  Five months after this diagnosis, Arnett applied for life insurance benefits but failed to truthfully answer an inquiry material to whether the Defendant would have approved her request for coverage.  About fifteen months after applying for insurance benefits Arnett died from causes including COPD.  Under these undisputed facts, Plaintiff should not be permitted to proceed further with his claims.

For these reasons, the Magistrate Judge recommends that Defendant's motion for summary judgment [Docket No. 48] be granted and Plaintiff's motion for summary judgment [Docket No. 60] be denied.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

DATED:   06/27/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Joshua F. Brown
S.K. HUFFER & ASSOCIATES, P.C.
josh@hfmfm.com

Lance V. Clack
FIGARI & DAVENPORT, L.L.P.
lance.clack@figdav.com

Steven Kenneth Huffer
S.K. HUFFER & ASSOCIATES, P.C.
steveh@hufferlaw.com

Andrew G. Jubinsky
FIGARI  & DAVENPORT, LLP
andy.jubinsky@figdav.com

Dennis Francis McCrosson III
MCCROSSON & ASSOCIATES
dmccross@mccrossonlaw.com

Ryan S. McCrosson
MCCROSSON & ASSOCIATES
rmccrosson@mccrossonlaw.com